THE ESTATE OF O'BRIEN.

1. **Estates of Decedents:** ADMINISTRATION: WIFE'S RIGHT TO NOT
ABSOLUTE: DISCRETION OF COURT. While there are no restrictions or
limitations in the statute upon the right of a wife to administer upon
the estate of her husband, yet that right cannot be regarded as absolute,
for she may be insane or otherwise incompetent, and something must be
left to the discretion of the court.

2. ———: ———: GRANTING OF TO NON-RESIDENTS: DENIAL TO NON-
RESIDENT WIFE. While the statute does not in terms forbid the appoint-
ment of a non-resident administrator, yet the reason and policy of the
law are against it, and from a consideration of collateral statutes it
would *seem* that the legislature did not contemplate such appointment;
but in this case, where letters had already been granted to the resident
mother of the deceased, *held* that the court rightly refused to remove the
mother, and to appoint in her stead the non-resident wife.

*Appeal from Fremont Circuit Court.*

THURSDAY, JUNE 5.

HENRIETTA O'BRIEN, widow of the deceased, and Emma J.
Wilson, Mary J. Wilson and Alfred L. O'Brien, heirs at law of
the deceased, made application to the circuit court to be ap-
pointed administrators of the deceased. The application was
refused, and Mary O'Brien, the mother, was appointed. The
applicants above named appeal.

*Stow, Hammond & Day*, for appellants.

*Draper & Thornell*, for appellee.

SEEVERS, J.—The deceased, J. W. O'Brien, for some thir-
teen years was a resident of Fremont county. During that
time he was reputed to be unmarried, and he made convey-
ances of real estate as if he was a single man. His mother
resided with him, and shortly prior to his death he and his
mother went to the state of New York, but for what purpose
does not distinctly appear.

He died intestate in New York on the thirtieth day of October, 1883, and on the seventeenth day of November, 1883, Henrietta O'Brien, his widow, by Charles Holis, her attorney in fact, filed a petition asking that she and I. W. Hammond, a citizen of Fremont county, be appointed administrators of the estate. The petition was accompanied with a bond, which was duly approved by the clerk of the circuit court, and the usual oath taken by Hammond as administrator, and on November 22, 1883, the oath required by law to be taken in such cases was filed by Henrietta O'Brien.

On November 21, 1883, Mary O'Brien filed a petition, asking that she be appointed administratrix of said estate, upon the grounds that she was a resident of Fremont county, and that the deceased when he died was a resident of said county, and that she was the mother of the deceased, and his next of kin residing in the state of Iowa. On the twenty-seventh day of November, 1883, the clerk refused the application of Henrietta O'Brien, and appointed Mary O'Brien administratrix of the estate, and she filed a sufficient bond and qualified as provided by law.

Afterwards, on December 12th, the applicants filed a petition asking that the appointment of Mary O'Brien be set aside, on the ground that she was incompetent and hostile to the interest of the heirs, and asking the appointment of the widow and said Hammond.

Henrietta O'Brien, at the time the several applications above stated were made, was a resident of the state of New York, but on the seventeenth day of December, 1883, she filed an affidavit in which it was stated that she "is now a resident of Fremont county," "and has so removed with the intention of domicile and residence, and has no present intention of removing therefrom."

Other matters are stated in the record upon which one or the other of the parties rely, but we think the foregoing is sufficient for the purposes of the opinion, except as may be

hereafter indicated. The court confirmed the action of the clerk, and denied the petition of the widow and heirs.

I. It is provided by statute that, "when an executor has not been appointed by will, administration shall be granted (1) to the wife of the deceased; (2) to the next of kin; (3) to his creditors; (4) to any other person whom the court may select." Code, § 2354.

Twenty days are allowed to each of the above classes in succession, commencing with the burial of the deceased, within which they may apply for administration upon the estate. Code, § 2356.

It is contended that there are no restrictions or limitations upon the right of the widow made by the statute; and, in support of this position, *Read v. Howe*, 13 Iowa, 50, is cited. The facts in that case are so materially different from this, that it has no material bearing on the question to be determined. While there are no restrictions or limitations in the statute on the right of the widow to administer on her husband's estate, yet it is quite apparent, we think, that of necessity the court has at least some discretion in such cases. For the wife may be insane, or otherwise clearly incompetent. The statute simply means that, if the wife is competent to discharge the trust, then she has paramount right to the appointment.

It is claimed that there are facts appearing in the record which show that the widow of the deceased should not be appointed; but we shall assume that the only objection is that she was a non-resident of the state when Mary O'Brien was appointed; and the question is whether this fact is sufficient to justify the court in refusing to appoint her.

It will be conceded that, in the absence of any statute on the subject, the objection just stated would not be sufficient to justify the action of the court. It is provided by statute that, "if any person appointed executor refuses to accept the trust, or neglects to appear within ten days after his appointment and give bond as hereinafter provided, or if an execu-

tor remove his residence from the state, a vacancy will be deemed to have occurred." Code, § 2347. " The term executor includes administrator when the subject-matter applies to an administrator." Code, § 45, sub-div. 21.

The duties of an executor and administrator are substantially the same. It is not essential that an executor should be named in the will. If this is not done, one may be appointed by the court, and in either case he must account for the trust reposed in him to the court in substantially the same manner as an administrator.

The consequences which follow the removal from the state of an executor are precisely the same in the case of the removal of an administrator. Therefore, we think, the statute applies, and was intended to apply, to both. There is no ambiguity in the statute, nor is there any escape from the conclusion that a vacancy is caused by the removal from the state of an executor or administrator. This provision is based on a wise and sound policy. Claims against an estate under the statute may be filed with the clerk and allowed by the administrator. If the latter is a non-resident, the statutory mode of filing, proving and allowing claims would be greatly embarrassed, to say the least. It is not the policy or intent of the statute that service on an administrator should be by publication, and yet such would be the only mode by which he could be brought into court if he was a non-resident. Besides this, the court could not readily obtain jurisdiction over him for the purpose of making the many orders that are required in the settlement of estates.

The statute does not in terms forbid the appointment of a non-resident, but it seems to us, if the removal of an administrator creates a vacancy, that such a person should not ordinarily be appointed in the first instance. The same reasons exist, and should have the same force and effect, in both cases.

The question is not before us as to whether the court can or cannot in its discretion appoint a non-resident an administrator of an estate in this state under any and all circumstances,

and, therefore, we must not be understood as determining it. There are no circumstances in this case requiring or making it proper to appoint the non-resident widow of the deceased administrator of the estate.

. But little aid can be derived from the decisions in other states in relation to the question under consideration, because of the differences in the statutes. But the statute of Illinois is, or at one time was, substantially the same as ours, as to the effect of a removal from the state of an executor or administrator; and, because of such provision, it was held in *Child v. Gratiot*, 41 Ills., 357, that a non-resident should not be appointed executor or administrator in that state.

. II.   There is some evidence tending to show that Mary O'Brien is illiterate and incompetent. But the evidence is not sufficient to justify us in directing her removal. Indeed, no such relief is asked, unless the applicants, or some of them, should be appointed. If the court finds Mary O'Brien to be incompetent, she will no doubt be removed, and some one else appointed. We deem it immaterial whether she is the next of kin or a creditor, as she claims to be, or whether she was neither. She is the only person who applied for administration except the appellants, and they are the only complaining parties. Mr. Hammond has not appealed, and therefore no relief can be afforded him, if any he would have been entitled to had he appealed.

AFFIRMED.